**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————— x
J J. L. TURNER LEGAL ASSOCIATION;  :    Civil Action No. _____
HOUSTON LAWYERS ASSOCIATION,       :
ON BEHALF OF ALL OTHERS            :
SIMILARLY SITUATED                 :
                                   :
          **Plaintiffs,**        :
                                   :
    **vs.**                       :
                                   :
                                   :
NATIONAL BAR ASSOCIATION,          :
                                   :
          **Defendant.**         :x

—————————————————————————


**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND**
**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................... iii

I.      INTRODUCTION ................................................................................................ 1

II.     JURISDICTION & VENUE ................................................................................ 3

III.    STANDING .......................................................................................................... 3

IV.     FACTS .................................................................................................................. 4

        A.      The Association ....................................................................................... 4

        B.      The Relevant Constitution And Bylaws Provision Regarding Affiliates ............... 5

        C.      Affiliates Were Deprived of Votes During Registration And Elections ................ 6

        D.      The Association Failed to Provide Procedural Remedy Despite Timely
                Objections. .............................................................................................. 7

        E.      The Upcoming Board Meeting ................................................................ 8

V.      LEGAL STANDARD .......................................................................................... 8

VI.     ARGUMENT AND AUTHORITIES ................................................................... 8

        A.      The Affiliates Have A Llikelihood Of Success On The Merits Of The
                Constitutional Violation And Improper Seating Of Officers .................................. 8

        B.      The Affiliates Will Suffer Irreparable Harm If The Contested Results
                Are Not Preliminarily Enjoined Prior To The Upcoming Board Meeting. .......... 10

        C.      Balancing The Hardships Weighs In Favor of The Injunctive Relief .................. 14

        D.      An Injunction Would Further The Public Interest. ................................................ 15

        E.      Immediate Entry of a Temporary Restraining Order Is Warranted Due to
                the Imminent October 16–18, 2025 Board Meeting.. ............................................ 16

VII.    CONCLUSION ................................................................................................... 16

CERTIFICATE OF SERVICE ....................................................................................... 18

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*725 Eatery Corp. v. City of New York*,
408 F. Supp. 3d 424 (S.D.N.Y. 2019)........................................................................ 8

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
784 F.3d 887 (2d Cir. 2015)...................................................................................... 8

*Broker Genius, Inc. v. Volpone*,
313 F. Supp. 3d 484 (S.D.N.Y. 2018)........................................................................ 9

*Craig v. Boudrot*,
40 F.Supp.2d 494 (SDNY 1999)............................................................................... 12

*Faiveley Transport. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009)...................................................................................... 10

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
481 F.3d 60 (2d Cir. 2007)........................................................................................ 10

*Home It, Inc. v. Wen*,
2020 WL 353098 (E.D.N.Y. Jan. 21, 2020).............................................................. 8

*International Banknote Co. v. Muller*,
713 F.Supp. 612 (S.D.N.Y.1989).............................................................................. 12

*Main Street Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*,
103 F. Supp. 3d 244 (N.D.N.Y. 2015)...................................................................... 14

*Mason Tenders Local 59 v. LIUNA*,
924 F.Supp. 528, aff'd mem., 101 F.3d 686  (2d Cir. 1996) .................................... 12

*Mullins v. City of New York*,
626 F.3d 47 (2d Cir. 2010)........................................................................................ 11

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
883 F.3d 32 (2d Cir. 2018)........................................................................................ 9

*New York v. U.S. Dep't of Homeland Security*,
408 F. Supp. 3d 334 (S.D.N.Y. 2019)...................................................................... 11

*Salinger v. Colting*,
607 F.3d 68 (2d Cir. 2010)................................................................................... 8, 14

*Spivak v Bertrand*,
147 AD3d 650 (1st Dept 2017) ................................................................................ 12

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
   554 U.S. 269 (2008) ................................................................................ 4

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ................................................................................ 3

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
   60 F.3d 27 (2d Cir. 1995) ......................................................................... 9

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ............................................................................... 14, 15

*Yemini v Goldberg*,
   60 AD3d 935 (2d Dept 2009) ................................................................ 12

**Statutes**

28 U.S.C. § 1332 ................................................................................... 3

28 U.S.C. § 1391 ................................................................................... 3

**Rules**

Fed. R. Civ. P. 65(b) ........................................................................... 16

Fed. R. Civ. P. 65(c) ........................................................................... 17

Local Rule 6.1(d) ................................................................................ 16

**Regulations**

New York Not-for-Profit Corporation Law §§ 601-607) ...................... 13

New York Not-for-Profit Corporation Law § 601(b) ............................ 13

*Revised Iowa Nonprofit Corporation Act* §504.711 ............................ 13

*Revised Iowa Nonprofit Corporation Act* §504.714 ............................ 13

Plaintiffs J. L. Turner Legal Association ("JLTLA"), Alabama Lawyers Association ("ALA"), and Houston Lawyers Association ("HLA") file this Memorandum in Support of the Motion for Temporary Restraining Order, and Injunctive Relief against Defendant National Bar Association ( "Association" and "Defendant") and in support thereof show the Court the following:

## I.    INTRODUCTION

On July 31, 2025, the Association conducted its 100th annual convention election wherein its Elections Committee failed to comply with the Association's Constitution, Bylaws, and longstanding governance practices—resulting in the disenfranchisement of hundreds of its members, namely its affiliate members. Despite prompt and credible objections to outcome-determinative voting irregularities regarding the disenfranchisement of Affiliate member votes, the Association moved to destroy the ballots, and ultimately sought to certify the challenged election results.

Now, the Association intends to convene a Board Meeting on October 16-18, 2025, in New York City, with officers whose election was tainted by procedural violations and who were not lawfully elected under the Association's governing documents, Constitution and Bylaws. Election and voting allocation actions—taken unilaterally by the Election Committee—exceeded its authority and disregarded the Association's established practice, including the recognition of on-site registration and contemporaneous dues payment for Affiliate voting eligibility.

As a result of the Defendant's unlawful conduct, hundreds of members were excluded from the Affiliate vote counts. Unless this Court intervenes, enjoins the Defendant's actions and appoints a monitor to administer the additional Affiliates voting, Affiliate voters will be disenfranchised and deprived of their right to select candidates of their choice in the 2025 elections. The Election Committee's actions violated the Association's Constitution and Bylaws in at least four respects, each of which, standing alone, warrants vacatur of portions of the Defendant's election actions:

*First*, the Defendant disregarded Chapter IV, Section 4 of the Bylaws, which mandates that each Affiliate "cast one (1) vote for itself and one (1) additional vote for every ten (10) Regular, Associate, and Retired Members of that Affiliate registered at the Annual Meeting." No provision authorizes deviation from this formula.

*Second*, the Defendant set arbitrary limitations on the timing of on-site dues and fee payments for purposes of establishing Affiliate status and voting strength—without notice, justification, or authority.

*Third*, the Defendant failed to provide Affiliates with formal notice or opportunity to comment on the Election Committee's new rules, denying them procedural fairness and violating principles of due process.

*Fourth*, the Defendant refused to place the Affiliate voting dispute on the Annual Meeting agenda or permit affiliates to challenge the voting process or tally.

The October 16-18, 2025 Board Meeting —the first public convening since the Association's Annual Convention—has created an urgent need for judicial intervention. The Affiliates made good faith efforts to resolve these violations internally but were denied even the opportunity to raise or discuss the matter. Accordingly, the Affiliates have no alternative but to seek judicial enforcement of the Association's Constitution and Bylaws. Absent timely intervention by this Court, the Association will proceed to seat officers whose elections were conducted in clear violation of those governing documents—specifically through the unlawful exclusion of Affiliate voting allocations expressly mandated by the Constitution and Bylaws. Such action would result in a Board that fails to constitutionally represent the will of the full membership and would further erode the integrity and legitimacy of the Association's leadership.

## II.    JURISDICTION & VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, and the parties are citizens of different states. Venue is proper in the District under 28 U.S.C. § 1391 because Defendant conducts substantial operations and governance activities in this District. In addition, Defendant is conducting a Board meeting in this District on or about October 16, 2025.

## III.    STANDING

Plaintiffs have standing to seek injunctive relief under *Summers v. Earth Island Inst*., 555 U.S. 488 (2009), which recognizes the three elements of standing: injury in fact, causation, and redressability. Here, the Affiliates have suffered a concrete injury-in-fact arising from the Association's breach of its Constitution and Bylaws—specifically, the failure to allocate the Affiliate voting strength to which they were entitled in the annual election. As a result, the Affiliates were denied the opportunity to cast their full and proper votes, directly impairing their ability to participate in the governance of the Association and elect its leadership. The refusal to follow established election procedures directly impairs the Affiliates' ability to represent their members, participate in governance, and advocate for fair and lawful elections. As discussed, *infra*, this injury is concrete and particularized: the Affiliates seek a specific vote count that is required for proper voting under the Constitution and Bylaws.  This injury is actual, and not conjectural or hypothetical, because it is undisputed that the Association had hundreds of pre- and on-site registrations that did not assign votes to the Affiliates from those registrants. The Affiliates' injury is unquestionably caused by the Association in that the Association's Election Committee did not assign the proper vote tally.

Finally, the injury is redressable because Plaintiffs seek relief that falls squarely within this Court's equitable authority—namely, to compel the Association to comply with its Constitution

and Bylaws, to assign a court-appointed monitor to correct the procedural violations and award the correct votes, and to ensure that its leadership reflects a lawful and representative election outcome. *See Sprint Commc'ns Co. v. APCC Servs., Inc*., 554 U.S. 269, 273–74 (2008) (defining redressability as an inquiry asking whether "it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit").

## IV.    FACTS

### A.    The Association

The Association is a leading professional organization of national and international stature, with a network of approximately 67,000 attorneys and law students. Complaint ¶16. The Association's objectives are "to advance the science of jurisprudence, to improve the administration of justice, preserve the independence of the judiciary, to uphold the honor and integrity of the legal profession, to promote professional and social intercourse among the members of the American and the international bars, to promote legislation that will improve the economic condition of all American citizens regardless of race, sex, or creed in their efforts to secure a free and untrammeled use of the franchise guaranteed by the Constitution of the United States, and to protect civil and political rights of the citizens and the residents of the United States." (2024 Constitution, Art. II).[1]

The Association's Constitution and Bylaws, last amended July 18, 2024 (the "Constitution") provide that the Association is managed by a Board of Governors (Board) consisting of a President, President-Elect, Four Vice Presidents, Secretary, Treasurer, Six members-at-Large, twelve Regional Directors, and various other representatives. (2024 Constitution, Art. VIII). These Board officers are elected by the members and Affiliates at the

---

[1] A true and correct copy of the Association's Constitution is included as Exhibit 1 to the Declaration of Reginald Richter filed in support of the Motion for TRO and Injunctive Relief.

Association's annual meeting. (*Id*. Art. VI.)  The Constitution provides that the Board shall meet at least four times in each Association year at the time and place determined by the President.  (*Id*. Art. VIII § 5.)

**B.      The Relevant Constitution And Bylaws Provision Regarding Affiliates**

The Association's Constitution recognizes multiple classes of membership, including "Affiliate Members," defined as chartered associations of lawyers that support the Association's objectives and meet specified requirements. Constitution, Article IV, § 5.A.  Pursuant to Article V, Rights of Members, Section 4 of the Constitution, "Affiliate Members are entitled to vote in the election of Officers and Members-at-Large, in accordance with the applicable provisions of the Bylaws."

The Association's Bylaws set forth the rules for nominations and elections. As relevant here, Chapter IV, Section 4 of the Bylaws specifies the allocation of Affiliate voting rights as follows: "Each Regular, Associate and Retired Member registered at the Annual Meeting shall be entitled to one (1) vote. An Affiliate Member shall be entitled to cast one (1) vote for itself and one (1) additional vote for every ten (10) Regular, Associate and Retired Members of that Affiliate registered at the Annual Meeting." Furthermore, it is provided that an Affiliate's total votes "may be cast by any authorized designee of that Affiliate registered at the Annual Meeting." *Id*.

The Bylaws also prescribe election administration, including: the timing of elections for Officers and Members-at-Large, which are to be held, pursuant to Chapter IV, Section 3 of the Bylaws, "on the third day of the Annual Meeting." Section 5 requires the Elections Committee to tally the votes. The Constitution and Bylaws contain no provisions authorizing the elimination or alteration of the requirement that each Affiliate is "entitled to cast one (1) vote for itself and one (1) additional vote for every ten (10) Regular, Associate and Retired Members of that Affiliate registered at the Annual Meeting."

### C.    Affiliates Were Deprived of Votes During Registration And Elections

Although members were permitted to register for the Association's annual convention—thereby qualifying them to vote in the annual election—the Association did not provide any mechanism, either in advance or on-site, for new or existing members to designate their affiliation on the registration forms.  The registration forms used for the Annual Meeting included each member's home or business address, from which Affiliate association could have been readily determined.  Nevertheless, the Defendant failed to allocate on-site registrants toward their respective Affiliates' voting strength, thereby unlawfully depriving Affiliates of votes to which they were entitled under Article V, Section 4 of the Constitution and Chapter IV, Section 4 of the Bylaws. This failure not only violated the Association's governing documents but also disenfranchised Affiliates and undermined the integrity of the election process.

The Bylaws also contain no exception permitting the exclusion of members or Affiliates who register or pay dues at the Annual Meeting to be included in the Affiliate voting tally. To the contrary, Chapter II, Section 3(B) of the Bylaws contemplates that dues may be paid on-site, providing that membership runs for twelve months "from the date joined," with dues payable "annually on the anniversary of the date joined."  As such, members and Affiliates who registered and paid at the Annual Meeting were "in good standing" and entitled to be counted toward their Affiliates' voting strength. None of the votes of  members who registered and paid at the Annual Meeting, or within the days preceding it, were counted toward the extra votes that their Affiliates were entitled to cast.

The failure to allocate votes tied to every registered Affiliate member is contrary to the plain text of the Bylaws, which conditions an Affiliate's additional votes on "every ten…Members of that Affiliate registered at the Annual Meeting," not on pre-registration or other unstated prerequisites. Affiliates and members paid, and/or attempted to pay, required dues and satisfied

registration requirements. In past practice, membership and Affiliate dues have been paid at the convention itself and members and Affiliates, up to the time of the vote, were entitled to be counted toward their Affiliate's allocation.

The disenfranchisement extended not only to members who paid their dues and registered at the Annual Meeting itself, but also to members who had timely paid dues in advance of the convention and were in good standing at the time of registration. In both instances, Defendant failed to allocate such members toward their Affiliates' voting strength, thereby unlawfully depriving Affiliates of votes to which they were entitled under Article V, Section 4 of the Constitution and Chapter IV, Section 4 of the Bylaws.

### D. The Association Failed to Provide Procedural Remedy Despite Timely Objections.

Following the July 29, 2025 election, the president of one of the Affiliates wrote to the Association President informing the Board, "I wanted to inform you that I intend to contest the Affiliate report tomorrow during plenary." The Secretary of the Board of Governors acknowledged receipt of the protest. However, the Association President refused to put the challenge on the agenda before the vote tally was revealed in open session. *See* Declaration of JLTLA President ¶¶6, 7. Further, when other Affiliates in multiple states voiced their concerns pertaining to the vote count – and also requested that the issue of Affiliate voting-allocation be placed immediately on the agenda, their request was also denied. Declaration of JLTLA President at ¶7.

Although the Affiliates have sought internal resolution consistent with the Association's implicit self-governance, their effort to secure agenda time before the Board to address the allocation error was rebuffed, leaving them without an adequate intra-organizational remedy to prevent the seating of the prematurely elected officers at the Association's first Annual meeting post the invalid election. For these reasons, an injunction is warranted.

E.        **The Upcoming Board Meeting**

Pursuant to Article VIII of the Association's Constitution, special meetings of the Board of Governors may be convened by the President and/or the Association. The Association announced that the first such meeting of the Board following the 2025 Annual Meeting is scheduled to occur in New York City on or about October 16-18, 2025.[2] Given the unresolved irregularities in the vote tally and the unlawful certification of certain executive positions, immediate judicial intervention is necessary to prevent the improper seating of individuals whose elections were tainted by the improper vote tally.

## V.    LEGAL STANDARD

A party seeking a preliminary injunction must demonstrate:

(1) 'a likelihood of success on the merits or ... sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor'; (2) a likelihood of 'irreparable injury in the absence of an injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved' by the issuance of an injunction.

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010)).

## VI.    ARGUMENT AND AUTHORITIES

A.        **The Affiliates Have A Llikelihood Of Success On The Merits Of The Constitutional Violation And Improper Seating Of Officers.**

Plaintiffs "need only 'show a likelihood of success on the merits of at least one of [its] claims.'" *Home It, Inc. v. Wen*, 2020 WL 353098, at *5 (E.D.N.Y. Jan. 21, 2020) (quoting *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019)). In addition, Plaintiffs "need not show that success is an absolute certainty. He need only make a showing that

---

[2] A true and correct copy of the Association's advertising of the New York event is included as Exhibit 2 to the Declaration of Reginald Richter filed in support of the Motion for TRO and Injunctive Relief.

the probability of his prevailing is better than fifty percent.'" *Home IT, Inc. v. Wen*, 2020 WL

353098, at *5 (quoting *Broker Genius, Inc. v. Volpone*, 313 F. Supp. 3d 484, 497 (S.D.N.Y. 2018)).

In this adversary proceeding, the Plaintiffs, on behalf of themselves and all other similarly

situated Affiliates, seek a declaratory judgment regarding the July 29, 2025 election, preliminary

and permanent injunctive relief regarding the October 16, 2025 meeting, and damages arising from

forcing the Affiliates to file this injunction and the Defendant's violation of the Association's

governing documents concerning Affiliate voting.  The Election Committee's refusal to credit

Affiliates with their full and proper vote count was arbitrary, unsupported by any lawful authority,

and in direct violation of the Association's Constitution and Bylaws. This breach of established

governance procedures threatens to possibly seat individuals on the Board of Governors whose

elections may not reflect the legitimate will of the full membership, given the exclusion of votes

that Affiliates were entitled to under the governing rules.

Plaintiffs are also entitled to a mandatory injunction regarding the October 16-18, 2025

meeting, if needed. "Courts refer to preliminary injunctions as prohibitory or mandatory.

Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory

injunctions alter it." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.,* 883 F.3d 32, 36-37

(2d Cir. 2018) (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir.

1995)).  Here, Plaintiffs show both a likelihood and  a clear or substantial likelihood of success on

the merits.  Indeed, Plaintiffs and many other Affiliates suffer at least three forms of harm.  First,

the members of each of the affected Affiliates were deprived of their right to have their

registrations attributed to their Affiliate(s) for purposes of determining voting strength. Second,

the Affiliates were clearly entitled to an ascertainable right to a prescribed vote tally in the

Association's officer elections under the Association's Constitution and Bylaws. There are no

exceptions under the Constitution and Bylaws for these explicit voting rights.  Third, the members and Affiliates are entitled to ensure that the "correct" officers are seated on the Board.  Absent a proper tally of Affiliate votes, the "results" of the July 2025 election cannot be deemed valid. Members and Affiliates have no assurance that the Officers who are scheduled to convene at the October 2025 meeting in New York were lawfully elected or reflect the collective will of the Association's voting body. The requested injunction is narrowly tailored to preserve the status quo and prevent irreversible harm. Plaintiffs do not seek to disrupt the Association's operations but to ensure that its leadership reflects a lawful and transparent electoral process.

Accordingly, immediate judicial intervention is necessary to prevent the installation of officers whose elections were tainted by procedural violations. Such relief is critical to ensure that the Association's leadership is selected in accordance with its Constitution and Bylaws, and that its electoral process remains lawful, transparent, and representative of its full membership.

This Court also  has the authority to appoint an independent monitor to review registration and voting records and ensure that the vote tally will be administered correctly.

**B.    The Affiliates Will Suffer Irreparable Harm If The Contested Results Are Not Preliminarily Enjoined Prior To The Upcoming Board Meeting.**

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transport. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citations and quotation marks omitted). "Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quotation marks omitted). "Plaintiffs need only show 'a threat of irreparable harm, not that irreparable harm

already ha[s] occurred.'" *New York v. U.S. Dep't of Homeland Security*, 408 F. Supp. 3d 334, 350 (S.D.N.Y. 2019) ("*DHS*") (quoting *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010)).

The October 16-18, 2025 Board of Governors meeting is not a routine gathering—it is the first convening of the new Officers and Members at Large, during which time critical decisions will be made regarding budget allocations, committee reports, policy initiatives, and strategic direction. Proceeding with this meeting under the leadership of individuals whose elections were tainted by procedural violations poses a direct threat to the integrity of the Association's governance.

Defendant's decision to proceed with the October 16-18, 2025 meeting, despite its breaches of fiduciary duty and contract, and failure to conduct the July 29, 2025, election in accordance with the Association's Constitution and Bylaws—specifically, by denying Affiliates their rightful ballot allocations—has caused and continues to cause irreparable harm. Affiliates have been and continue to be irreparably harmed by Defendant's breaches of fiduciary duty and contract, and failure to conduct the July 29, 2025, election in accordance with the Association's Constitution and Bylaws. The actions committed by the Election Committee and the Board denied qualified Affiliates the privilege of receiving their proper number of ballots to vote for the candidates of their choosing and this irregularity, error or mistake made by the Elections Committee is irreparable and made it impossible to determine who was legally or rightfully entitled to the contested offices.

More specifically, by way of an example from the improperly constituted Affiliate voting process, only thirty-one (31) votes separated the last two contenders for one of the Member-at-Large positions, and a mere seven (7) votes separated the contenders for the office of President-Elect. Declaration of JLTLA President at ¶9, and Exhibit 1 thereto. These razor-thin margins

highlight the decisive effect of the Defendant's unlawful conduct on the outcome of the July 2025 election, since it is likely that one hundred (100) or more votes were not properly allocated to the Affiliates. If the election results are allowed to stand, officers may be installed who do not reflect the will of the full membership. The Affiliates possess, along with members, a constitutional right to elect, free from Association interference or obstruction, whom they wish to elect as their leaders. The Affiliates cannot unwind this vote if allowed to stand, and persons will be allowed to be installed in those positions who may not reflect the will of the Affiliates.

Indeed, deprivation of voting rights has long been regarded as irreparable because it obviously cannot be remedied by an award of damages. See *Craig v. Boudrot*, 40 F.Supp.2d 494, 501 (SDNY 1999); *Mason Tenders Local 59 v. LIUNA*, 924 F.Supp. 528, 542-43, aff'd mem., 101 F.3d 686 (2d Cir. 1996). In *International Banknote Co. v. Muller*, 713 F.Supp. 612 (S.D.N.Y.1989) the court noted that court have consistently found irreparable harm when stakeholders are denied the right to vote and unnecessarily frustrated in their attempt to obtain representation on the board of directors. In *Yemini v Goldberg*, 60 AD3d 935, 937 (2d Dept 2009), the Court found that the movant faced irreparable injury absent injunctive relief where "control and management" of the relevant entity "were at stake." In *Spivak v Bertrand*, 147 AD3d 650, 651 (1st Dept 2017) the court found that "[w]ithout the preliminary injunction, plaintiff will be irreparably harmed, since ... he will be stripped of his voting power and decision-making rights, including his right to vote on the potential merger." Likewise, members of nonprofit associations have a legally protected interest in voting and representation, particularly when those rights are defined by the organization's charter and bylaws. The Defendant's exclusion of Affiliate votes in the July 2025 election mirrors the type of violation courts prohibit, where such conduct undermines the

legitimacy of the organization's leadership and warrants judicial intervention. Plaintiffs here seek to vindicate those same rights under the Association's Constitution and Bylaws.

Moreover, the exclusion of Affiliate members from voting in the July 2025 election constitutes a violation of statutory rights protected under various not-for-profit corporation acts (e.g., New York Not-for-Profit Corporation Law (NPCL) §§ 601-607). New York Not-for-Profit Corporation Law § 601(b), specifically mandates that member's voting rights must be exercised in accordance with the bylaws and prohibits any amendment or rule that abridges those rights without member consent.. Likewise *Revised Iowa Nonprofit Corporation Act* §504.714 also provides that any amendment to increase or decrease the vote required for any member action must be approved by the members.  Thus, the decision to reduce and not allocate the proper Affiliate votes was erroneous and unlawful. Further, *Revised Iowa Nonprofit Corporation Act* §504.711 provides that the members were entitled to a list of voting members.  However, when an Affiliate President asked for the list of registered members, the Defendant never provided it.   See Declaration of JLTLA President ¶¶ 3, 4.

The resulting harm cannot be remedied through monetary damages alone—lost voting rights cannot be retroactively restored, flawed election certifications cannot be undone through compensation, and the erosion of institutional legitimacy cannot be repaired without judicial intervention. This injury is not merely reputational; it strikes at the procedural and constitutional core of the Association's governance. Absent injunctive relief, Plaintiffs and similarly situated Affiliates will remain disenfranchised, and the Association's leadership will continue to function under a mandate that likely fails to reflect the will of its full voting membership. Moreover, without the Court directing the entry of the proper Affiliate vote tally, the members and Affiliates have no assurance that the Officers who are about to convene at the October 2025 meeting in New York

13

reflect their will. Only immediate equitable relief can preserve the integrity of the Association's governance, protect the franchise rights of its members, and prevent the continued erosion of member confidence in the fairness and legitimacy of the Association's electoral process.

### C.    Balancing The Hardships Weighs In Favor of The Injunctive Relief

When balancing hardships, "a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding the requested relief." *Main Street Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*, 103 F. Supp. 3d 244, 262 (N.D.N.Y. 2015) (quoting *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008)). The party moving for preliminary injunctive relief "must establish that the 'balance of hardships tips in their favor regardless of the likelihood of success." *Main Street Baseball*, 103 F. Supp. 3d at 262 (quoting *Salinger*, 607 F.3d at 79-80). And in this context, "[t]he relevant harm is the harm that ... occurs to the parties' legal interests" and "cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Salinger*, 607 F.3d at 81.

Here, the Affiliates' seek only to restore fairness, ensure adherence to the Association's governing documents, and reaffirm confidence in the Association's democratic processes. Thus, the balance of equities decisively favors granting the requested injunction. The harm resulting from the  unlawful exclusion of Affiliates votes in the July 2025 election is neither theoretical nor remote, it is immediate, structural, and irreparable. Without judicial intervention, officers may be seated who do not reflect the accurate vote tally, undermining the legitimacy of the Association's leadership and depriving members of their right to a fair and representative election. Affiliates were denied the opportunity to exercise voting rights expressly granted under the Association's Constitution and Bylaws, rights that are both contractual and statutorily protected under law. This exclusion undermines the legitimacy of the Association's governance and disenfranchises credentialed members whose votes could have materially changed the outcome of the election.  In

contrast, the Association faces no comparable hardship. In fact, compliance with lawful procedures—such as preserving ballots, recognizing credentialed affiliates, and adhering to their own governing documents—imposes, at most, a slight administrative inconvenience. These obligations are neither extraordinary nor burdensome; they are foundational to lawful nonprofit governance. Equity does not shield an organization from the consequences of violating its own bylaws. It demands accountability. For these reasons, injunctive relief is warranted.

### D.    An Injunction Would Further The Public Interest.

Lastly, the Supreme Court has made clear that, "[i]n considering the public interest element for granting an injunction, the focus is generally on how the parties' specific actions would impact the public at large." *Winter,* 555 U.S. at 13-14.  Here, the public interest weighs heavily in favor of injunctive relief. The Association is a national professional body whose governance decisions shape standards of practice, influence public trust, and affect the equitable representation of thousands of members across the country. Its elections are not merely internal exercises; they are mechanisms through which legitimacy, accountability, and member opinions are expressed. When those mechanisms are compromised—through procedural irregularities, suppression of affiliate participation, or disregard for governing documents—the harm reverberates far beyond the Association's walls. It undermines confidence in professional self-regulation, weakens democratic norms within civil society, and erodes the credibility of institutions tasked with representing diverse constituencies.

The public also has a vested interest in ensuring that organizations like the Association operate transparently, lawfully, and in accordance with their own rules. Upholding procedural integrity is not only essential to protecting the rights of individual members and affiliates—it is vital to preserving the Association's role as a trusted and representative voice in national discourse.

Without judicial intervention, the Association risks entrenching leadership that lacks a lawful mandate, thereby compromising its legitimacy and diminishing its ability to serve the public good. In short, the requested injunction serves not only the interests of the Affiliates, but the broader public interest in fair, accountable, and democratic governance. For these reasons, injunctive relief is warranted.

    **E.**    **Immediate Entry of a Temporary Restraining Order Is Warranted Due to the Imminent October 16–18, 2025 Board Meeting..**

Fed. R. Civ. P. 65(b) permits the issuance of a Temporary Restraining Order ("TRO") under appropriate circumstances, "without written or oral notice to the adverse party." Here, there is no doubt that the irreparable harm that will be suffered by the Affiliates if the premature officers are seated on October 16-18, 2025 is imminent, not remote or speculative, and the disenfranchisement and loss of the Affiliate votes is incapable of being fully remedied by monetary damages.

Given the proximity of the October 16-18, 2025 Board of Governors meeting, Plaintiffs respectfully request that the Court schedule an expedited hearing on this motion pursuant to Local Rule 6.1(d). The relief sought is time-sensitive and necessary to prevent the seating of officers whose elections are subject to serious procedural challenge, and allow the Court to appoint a monitor for the additional Affiliate voting. Plaintiffs are prepared to submit supplemental briefing or declarations as needed to support this request. Accordingly, the TRO should issue immediately.

## VII.    CONCLUSION

The integrity of the Association's electoral process—and the legitimacy of its leadership—depends on adherence to its governing rules. Because Defendant unlawfully altered those rules and disenfranchised Affiliates, Plaintiffs are likely to succeed on the merits and face irreparable harm absent intervention. The balance of equities and the public interest both favor restoring

fairness and compliance. Plaintiffs therefore respectfully request that the Court grant their Motion and enter a Preliminary Injunction in the form attached hereto as the proposed order.

Further, given the equitable nature of the relief sought, the absence of any material monetary injury or undue burden to Defendant, and the compelling public interest in maintaining the integrity of the Association's governance and elections, Plaintiffs further request that the Court waive the requirement of posting security pursuant to Fed. R. Civ. P. 65(c), and for such further relief as justice requires.

DATED: October 14, 2025

CERTIFICATE OF COMPLIANCE:  I certify that this brief contains <u>4,975 words</u>, excluding the parts of the brief exempted by Local Civil Rule 7.1(c).

Respectfully submitted,

<u>/s/ Reginald Richter        </u>
REGINALD J. RICHTER
**RICHTER RESTREPO, PLLC**
1120 6th Avenue, Suite 4102
New York, N.Y. 10036
347-745-0375 - Telephone

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2025, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Southern District of New York, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

/s/ Reginald J. Richter
REGINALD J. RICHTER